UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 07-17-KKC

MARTY HAGAN and
NICOLE HAGAN,                                                                         PLAINTIFFS,

vs.                                    **OPINION AND ORDER**

GREENPOINT CREDIT CORPORATION,
GREEN TREE SERVICING, LLC,
GREEN TREE INSURANCE AGENCY OF
KENTUCKY, INC., and
AMERICAN BANKERS INSURANCE
COMPANY OF FLORIDA,                                                                  DEFENDANTS.

\* \* \* \* \* \* \* \*

This matter is before the Court on Defendants' Motions to Compel Arbitration. [R. 17, 31]. For the reasons stated below, the Court GRANTS Defendants' Motions.

**I. BACKGROUND FACTS**

In November 1998, the Plaintiffs and the Defendant, GreenPoint Credit Corporation ("GreenPoint") entered into a mortgage agreement, in which GreenPoint loaned the Plaintiffs $88,625 for the purchase of a manufactured home, which served as collateral. The transaction consisted of two documents, the mortgage agreement and a document titled "Note, Disclosure and Security Agreement, Waiver of Trial by Jury, and Agreement to Arbitration or Reference or Trial by Judge Alone" (Note/Security Agreement"). [Rec. No. 31, Exhibits A & B]. The Note/Security Agreement contains an arbitration agreement, which states as follows:

Any controversy or claim between or among you and me or our assignees arising

>out of or relating to this Agreement or any agreements or instruments relating to or delivered in connection with this Agreement, including any claim based on or arising from an alleged tort, shall, if requested by either you or me, be determined by arbitration, reference, or trial by judge, as provided below. A controversy involving only a single claimant, or claimants who are related or asserting claims arising from a single transaction, shall be determined by arbitration as described below. Any other controversy shall be determined by judicial reference of the controversy to a referee appointed by the court or, if the court where the controversy is venued lacks the power to appoint a referee, by trial by a judge without a jury, as described below. **YOU AND I AGREE AND UNDERSTAND THAT WE ARE GIVING UP THE RIGHT TO TRIAL BY JURY, AND THERE SHALL BE NO JURY WHETHER THE CONTROVERSY OR CLAIM IS DECIDED BY ARBITRATION, BY JUDICIAL REFERENCE OR BY TRIAL BY A JUDGE.**

The Mortgage Agreement does not contain an arbitration provision. However, both the Mortgage Agreement and the Note/Security Agreement required Plaintiffs to maintain adequate property insurance on the collateral. [R. 31, Exhibit A, pg. 3, Exhibit B, pgs. 3-4]. In the event the Plaintiffs failed to maintain such insurance, the agreements provided that the lender, GreenPoint, could place a property insurance policy on the property in order to protect the lender's interest in the collateral. *Id*.

As part of its business, American Bankers Insurance company of Florida, contracted with Co-Defendants, GreenPoint and Green Tree, to track insurance coverage of borrowers to ensure that they complied with the contractual obligation to maintain adequate property insurance for the protection of the security interest held in the property by the lender, and to provide coverage to protect that interest, should borrowers default on the obligation. In February 2006, ABIC became aware that Plaintiff's property and hazard insurance on the collateral had been cancelled.

By letter dated February 8, 2006, Plaintiffs were reminded of their obligation to maintain insurance and that no evidence of existing coverage was available. The letter further advised

Plaintiffs that unless they provided proof of acceptable insurance within forty-five(45) days, the lender would exercise its contractual right to issue a lender-placed insurance policy on the collateral. The letter further explained that the Plaintiffs would be responsible for the cost of any lender-placed insurance policy. [R. 31, Exhibit D].

Following the initial notice of intent to issue a lender-placed policy, otherwise known as a force placed policy, Plaintiffs were notified by letter on or about March 27, 2006 that such a policy had, in fact, been placed on the collateral. In the "Notice of Placement Letter," Plaintiffs were notified that they could obtain insurance of their own choice any time and that if they provided evidence of insurance, the lender-placed policy would be canceled an unearned premiums would be refunded or credited to borrowers. [R. 31, Exhibit E].

Defendant American Bankers Insurance Company of Florida ("ABIC") issued Policy No. CMH9125762 (the "force placed" policy), which contains the following arbitration provision:

> Any and all disputes, controversies or claims of any kind and nature between YOU and US arising out of or in any way related to the validity, enforceability, interpretation, performance or breach of any provision of this policy, including this arbitration provision, and upon which a settlement has not been reached by YOU and US, shall be resolved, exclusively, by arbitration in accordance with the Federal Arbitration Act (9 U.S.C. Section 1 Et Seq.).

[R. 31, Exhibit C]. Included with the Policy was a letter to Plaintiffs explaining that the attached policy had been lender-placed. (Exhibit F).

In August 2006, Plaintiffs' home was seriously damaged by lightning. Plaintiffs filed a claim on the lender-placed policy. During the course of investigating the claim, it was revealed that State Farm Insurance Company ("State Farm") had also issued a policy on Plaintiffs' property, which had not been reported to Defendants. It was also revealed that State farm had

tendered payment on its claim. ABIC takes the position that the State Farm policy is primary and that the force placed policy provides only excess coverage. ABIC further maintains that State Farm paid Plaintiffs more that the Plaintiffs' actual loss and that there is no remaining loss payable under the force placed policy.

In February 2007, the Plaintiffs filed a complaint in Anderson Circuit Court alleging fraud, violation of the Consumer Protection Act, and fraud in the inducement against all Defendants. In March 2007, the Defendants removed the action to this Court. The Complaint states that Defendants told Plaintiffs that the force placed insurance policy would cover the principal balance of their mortgage, however the policy did not provide such coverage. Plaintiffs also maintain that they never received a copy of the force placed policy and that it was forced upon them for no valid reason.

## II. ANALYSIS

"The Federal Arbitration Act ("FAA") provides that arbitration clauses in commercial contracts 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. § 2. If a court determines that the cause of action is covered by an arbitration clause, it must stay the proceedings until the arbitration process is complete." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2002); 9 U.S.C. § 3.

In considering a motion to stay and compel arbitration, the Court must consider the following: "first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court

4

concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Fazio*, 340 F.3d at 392. "It is a well-established rule that any doubts regarding arbitrability should be resolved in favor of arbitration." *Id.*

### A. Agreement to Arbitrate

#### 1. Arbitration Provision in the Insurance Policy

Both the Note/Security Agreement and the insurance policy issued by ABIC contain arbitration provisions. An arbitration agreement can be invalidated for the same reasons that any contract may be invalidated. *Fazio*, 340 F.3d at 393. The Plaintiffs argue that the arbitration provision in the insurance policy is invalid because they never signed nor received the insurance policy and KRS § 417.050(2) prohibits arbitration clauses in insurance contracts.

Kentucky Revised Statute § 417.050 provides:

A written agreement to submit any existing controversy to arbitration or a provision in written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract. This chapter does not apply to:

(2) Insurance contracts. Nothing in this subsection shall be deemed to invalidate or render unenforceable contractual arbitration provisions between two (2) or more insurers, including reinsurers.

In *National Home Ins. Co. v. King*, 291 F.Supp.2d 518 (E.D..Ky 2003), the court held that KRS § 417.050(2) is not preempted by the Federal Arbitration Act ("FAA"), which ordinarily preempts state anti-arbitration laws. *Id.* at 528. However, the McCarran-Ferguson Act, which protects States' rights in the area of insurance regulation, saves KRS § 417.050(2) from preemption by the FAA. *Id.* In *Buck Run Baptist Church, Inc. v. Cumberland Sur. Ins.*, 983

S.W.2d 501, 504-505 (Ky. 1998), the Supreme Court of Kentucky explained the meaning of the term insurance contract as it relates to KRS § 417.050(2):

> An insurance policy is a contract of indemnity whereby the insurer agrees to indemnify the insured for any loss resulting from a specific event. The insurer undertakes the obligation based on an evaluation of the market's wide risks and losses. An insurer expects losses, and they are actuarially predicted. The cost of such losses are spread through the market by means of a premium.

The court explained the difference between the types of insurance contracts contemplated by KRS § 417.050(2) and other kinds of contracts:

> There is a significant difference between types of insurance contracts contemplated by KRS 417.050 as exempt from arbitration and the typical construction contract. In the case of the ordinary insurance contract between a policyholder and an insurance company, it can readily be understood why the legislature exempted future disputes from being subjected to compulsory arbitration because such contracts are contracts of adhesion to which the insured parties have limited bargaining power. However, a contractual relationship which involves a commercial construction project, such as we have here, involves a negotiated voluntary agreement between relatively sophisticated commercial entities and a surety company, each of which undertakes a significant financial obligation.
>
> *Buck Run Baptist Church, Inc.*, 983 S.W.2d at 504.

The ABIC insurance policy provides that ABIC will provide insurance on the Plaintiffs' manufactured home and in return Plaintiffs must pay the premium. [Rec. No. 31, Exhibit C]. Thus, it appears that the ABIC insurance policy is exactly the kind of insurance contract contemplated by KRS § 417.050(2) and the Kentucky Supreme Court in *Buck Run.* As discussed above, KRS § 417.050(2) is not preempted by the FAA, therefore, the arbitration clause contained in the ABIC insurance policy is void and Plaintiffs are not required to arbitrate their claims arising out of the ABIC insurance policy based on the arbitration provision contained in the insurance policy. Since the Court has determined that the provision is void in accordance

with KRS § 417.050(2), the Court will not address the Plaintiffs' argument that they neither received nor signed the insurance contract.

### 2. The Arbitration Provision in the Note/Security Agreement

#### a. Agreement to Arbitrate

The Note/Security Agreement contains an arbitration clause, which was signed by the Plaintiffs and provides as follows:

> Any controversy or claim between or among you and me or our assignees arising out of or relating to this Agreement or any agreements or instruments relating to or delivered in connection with this Agreement, including any claim based on or arising from an alleged tort, shall, if requested by either you or me, be determined by arbitration, reference, or trial by judge, as provided below. A controversy involving only a single claimant, or claimants who are related or asserting claims arising from a single transaction, shall be determined by arbitration as described below. Any other controversy shall be determined by judicial reference of the controversy to a referee appointed by the court or, if the court where the controversy is venued lacks the power to appoint a referee, by trial by a judge without a jury, as described below. **YOU AND I AGREE AND UNDERSTAND THAT WE ARE GIVING UP THE RIGHT TO TRIAL BY JURY, AND THERE SHALL BE NO JURY WHETHER THE CONTROVERSY OR CLAIM IS DECIDED BY ARBITRATION, BY JUDICIAL REFERENCE OR BY TRIAL BY A JUDGE.**
> [R. 31, Exhibit B]**.**

Thus, it appears that the Plaintiffs and GreenPoint entered into an arbitration agreement. However, "[a]n arbitration agreement may be invalidated for the same reasons for which any contract may be invalidated including forgery, unconscionability, and lack of consideration. [O]rdinary state-law principles that govern the formation of contracts will apply to this analysis." *Fazio*, 340 F.3d at 393 (internal quotation marks and citations omitted).

Plaintiffs argue that enforcement of the arbitration provision is against public policy and that "to allow corporate entities with monopolistic relationships to force policies on mortgagors

7

is unsound law." Kentucky law expresses a strong public policy in favor of enforcement of arbitration agreements. *Beyt, Rish, Robbins Group v. Appalachian Reg'l Healthcare, Inc.*, 854 S.W.2d 784, 786 (Ky.App.1993). Likewise, "the FAA expresses a strong public policy favoring arbitration of a wide class of disputes." *Cooper v. MRM Investment Co.* 367 F.3d 493, 498 (6th Cir. 2004). In light of the applicable law, the Court finds that the arbitration provision at issue is not against public policy.

Plaintiffs also argue that the Defendants have waived their right to enforce the arbitration clause because they filed an Answer and Notice of Removal to this Court. Waiver is a ground upon which a court may invalidate an arbitration agreement. *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 344 (Ky.App.,2001). Waiver is defined as "a voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which the party at his option might have demanded or insisted upon. A waiver may be either express or implied, although waiver will not be inferred lightly." *Id*.

In the Answer, Defendants specifically request that arbitration be ordered pursuant to the arbitration provision in the Note/Security Agreement. [R. 1, Answer, pg. 5]. Since the Defendants specifically requested that the court compel arbitration, the Answer cannot be construed as a waiver. Furthermore, the action was removed to this Court on March 12, 2007 and GreenPoint filed a Motion to Compel Arbitration on April 13, 2007, thus, GreenPoint promptly acted upon its right to compel arbitration. Thus, the filing of a notice of removal in this case cannot be construed as "a voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which the party at his option might have demanded or insisted upon," especially since the Defendants previously requested that the matter be submitted

to arbitration. *Wilder*, 47 S.W.3d at 344. Lastly, Defendants' responses to discovery requests from the Plaintiff cannot be construed as a waiver because the Defendants specifically state in the responses that they are entitled to compel arbitration in this matter. [R. 14, 15, 16]. "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). In light of the applicable law, the Court finds that the Defendants did not waive the right to enforce the arbitration agreement.

### b. Scope of Arbitration Agreement

Having determined that a valid arbitration agreement exists, the Court must now determine if the claims asserted by the Plaintiffs fall within the arbitration agreement. The Plaintiffs argue that even if the arbitration provision in the Note/Security Agreement is valid, the claims asserted do not fall within the scope of the arbitration clause because their claims arise out of the Mortgage Agreement and the insurance policy issued by ABIC not the Note/Security Agreement.

"District courts have the authority to decide, as a threshold matter, whether an issue is within the scope of an arbitration agreement. A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Fazio*, 340 F.3d at 395 (citations omitted).

The arbitration clause, which is contained in the Note/Security Agreement, clearly

9

pertains to any agreements related to or delivered in connection with the Note/Security Agreement. It reads:

> Any controversy or claim between or among you and me or our assignees arising out of or relating to this Agreement or any agreements or instruments relating to or delivered in connection with this Agreement.....
> [Rec. No. 31, Exhibit B].

The Note/Security Agreement and the Mortgage Agreement were executed on the same day, November 20, 1998. The Note/Security Agreement references the mortgage stating, "[t]his Agreement and any Mortgage...and other documents executed by me in connection with this agreement is the entire agreement between us...." [R. 31, Exhibit B, pg. 7]. Thus, the Mortgage Agreement constitutes an agreement or instrument relating to or delivered in connection with the Note/Security Agreement under the terms of the arbitration agreement.

"It is a well-established rule that any doubts regarding arbitrability should be resolved in favor of arbitration." *Fazio*, 340 F.3d at 392. "[I]n cases involving broad arbitration clauses the Court has found the presumption of arbitrability particularly applicable, and only an express provision excluding a particular grievance from arbitration or the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *United Steelworkers of America v. Mead Corp.*, 21 F.3d 128, 131 (6th Cir. 1994). Courts have construed the phrase "arising out of or relating to" broadly, "interpreting it to encompass all claims, contractual or tort, which touch upon matters covered by the agreement." *Orcutt v. Kettering Radiologists, Inc.*, 199 F.Supp.2d 746, 753 (S.D.Ohio 2002). Thus, all claims arising out of or relating to the Note/Security Agreement and/or the Mortgage Agreement are subject to arbitration.

Count one of Plaintiffs' Complaint alleges fraud against the Defendants.[1] Plaintiffs allege that all Defendants had a duty "to confirm hazard insurance is carried on all properties which act as security for its investments." [R. 1, Exhibit ]. Plaintiffs allege that they were notified by the Defendants that they did not carry adequate property interest and as a result an insurance policy was force placed on the Plaintiffs. Plaintiffs allege that the Defendants made material representations regarding the force placed insurance policy causing them to pay for two insurance policies, neither of which covered the balance of their mortgage.

Count two of Plaintiffs' Complaint alleges violations of the Consumer Protection Act, codified at KRS § 367.220 et seq. Plaintiffs allege that the Defendants had control over their money for the purpose of providing insurance that would cover the principal balance of the mortgage and Defendants created a false impression that the money would be used to pay the premium on such an insurance policy.

Count three of Plaintiffs' Complaint alleges fraud in the inducement. Plaintiffs stated that they received notice that they were required to pay for a forced insurance policy with ABIC which would cover the principal balance of their mortgage in the event of a loss. Plaintiffs argue that Defendants made material misrepresentations regarding the coverage of the insurance policy upon which the Plaintiffs relied in making the monthly premium payment to ABIC. Plaintiffs allege that the misrepresentations induced Plaintiffs to pay the monthly premium.

Both the Mortgage Agreement and the Note/Security Agreement contain provisions which require the Plaintiffs to maintain property insurance on the home. [R. 31, Exhibit A, pg. 3,

---

[1] The Plaintiffs collectively refer to Defendants GreenPoint, Green Tree Servicing, Green Tree Insurance, and ABIC simply as "Defendants" throughout the Complaint. [R. 1, Exhibit C, pg. 4].

Exhibit B, pgs. 3-4]. In the event Plaintiffs failed to maintain such insurance, the agreements provided that the lender, GreenPoint, could force an insurance policy on the Plaintiffs in order to protect the lender's interest in the collateral. *Id*.

Plaintiffs' claims relate to and arise out of these provisions in the Note/Security Agreement and Mortgage Agreement because the force placed insurance policy could not have been forced upon the Plaintiffs in absence of these provisions. Thus, Plaintiffs could not maintain the claims above without reference to the insurance provisions in the agreements. The Court has determined that all claims arising out of the agreements are subject to arbitration, thus, all Plaintiffs claims must be submitted to arbitration.

**3. Applicability of the Arbitration Provision in the Note/Security Agreement to ABIC and Green Tree Insurance**

Plaintiffs contend that the arbitration agreement does not affect their claims against ABIC or Green Tree Insurance Agency of Kentucky ("Green Tree Insurance") because those Defendants were neither parties to nor signatories on the Note/Security Agreement.

In *Javitch v. First Union Securities, Inc.*, 315 F.3d 619 (6th Cir. 2003), the court listed five theories for binding nonsignatories to arbitration agreements: "(1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel. *Id*. at 629.

ABIC argues that the theory of equitable estoppel applies in this case allowing ABIC to enforce the arbitration agreement contained in the Note/Security Agreement executed between the Plaintiffs and GreenPoint. ABIC argues that the Plaintiffs claims allege interdependent and concerted misconduct by both the signatory to the contract, GreenPoint, and a nonsignatory, ABIC, thus, the theory of equitable estoppel binds the Plaintiffs to arbitrate their claims against

ABIC.

In *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), the court explained equitable estoppel as it applies to a nonsignatory to an arbitration agreement:

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory. When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise[ ] out of and relate[ ] directly to the [written] agreement," and arbitration is appropriate. Second, "application of equitable estoppel is warranted ... when the signatory [to the contract containing the arbitration clause] raises allegations of ... substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Otherwise, "the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." (citations omitted).

Plaintiffs' claims against all Defendants presume the existence of the Note/Security Agreement or the Mortgage Agreement, which requires the Plaintiffs to maintain adequate property insurance. Without the insurance provisions in the two agreements, a force insurance policy would have never been placed on the Plaintiffs. Thus, Plaintiffs claims arise out of and relate directly to the written Note/Security and Mortgage Agreements. Furthermore, Plaintiffs collectively refer to all Defendants in the Complaint as simply "the Defendants." Thus, it appears that the Plaintiffs are alleging that the Defendants acted in some kind of concerted misconduct. In fact, Plaintiffs specifically argue that Green Tree and ABIC acted in concert in the alleged fraudulent conduct. [R. 32, pg. 11]. Therefore, despite the fact that ABIC and Green Tree Insurance were not signatories to arbitration agreement, the doctrine of equitable estoppel forces the Plaintiffs to arbitrate their claims against the two nonsignatories.

## III. CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1) Defendants' Motions to Compel Arbitration [R. 17, 31] are **GRANTED**;

(2) as all Plaintiffs claims must be referred to arbitration, Plaintiffs' Complaint is **DISMISSED**;[2]

(3) judgment will be entered contemporaneously with this opinion and order in favor of the Defendants.

Dated this 3rd day of August, 2007.

Signed By:
*Karen K. Caldwell*
United States District Judge

---

[2] *See Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)(affirming district court's decision to compel arbitration and dismiss plaintiff's complaint since all claims were subject to arbitration); *See also Hensel v. Cargill, Inc.*, 1999 WL 993775 (6th Cir. 1999) (unpublished) ("Under § 3 of the FAA, if any separate claim is referable to arbitration, then a stay of proceedings on the remaining claims is mandatory. However, litigation in which all claims are referred to arbitration may be dismissed").